RACHEL T. BEATY and DAVID BEATY, her husband and ROBERTA S. B. HORTON and LUCIEN HORTON, her Husband, v. INLET BEACH, INC., a corporation.

9 So. (2nd) 735                                         En Banc
September 29, 1942          Rehearing Denied November 13, 1942

Miller & Fitzsimmons, McCune, Hiaasen & Fleming, for appellants.

E. F. P. Brigham, for appellee.

BUFORD, J.:

This appeal is from a final decree quieting title to certain property in Inlet Beach, Inc., and granting other incidental relief, and from an order denying in substance a petition for rehearing.

The property involved in litigation is part of Government Lot 1 and all of Government Lot 6, both in Section 13, Township 50 South, Range 42 East.

To more thoroughly understand this suit to quiet title, the following history of this property is recited:

On March 6, 1925 Captain T. Hall, the owner of said property, together with Viola N. Hall, conveyed it by Warranty Deed to Hollywood Development & Harbor Co. On the same date the Hollywood Development & Harbor Co. executed a mortgage on the property to Captain T. Hall as security for the pay-

ment of two promissory notes of even date, each in the amount of $100,000.00, payable in one and two years after date.

Captain T. Hall on February 24, 1928, instituted an action at law against Hollywood Development & Harbor Co., (case No. 1880), predicated on the two promissory notes of $100,000.00 each, secured by the mortgage. A declaration and responsible pleadings were filed thereto by March 29, 1928. The action is still pending.

On March 20, 1928, Capt. T. Hall brought a bill of complaint (cause No. 4853) to foreclose the mortgage against Hollywood Development & Harbor Co. Answer and counter-claim were filed May 5, 1928, seeking cancellation of the mortgage because of fraud. No testimony was taken and the time for taking testimony expired. Then the cause was dismissed on December 11th, 1934, for lack of prosecution.

On July 1, 1929, the City of Fort Lauderdale issued tax sale certificate No. 3367 on the part of Government Lot 1 involved in litigation here, and tax sale certificate No. 3370 for Government Lot 6 involved in litigation here, both for unpaid taxes for the year 1928.

On September 14, 1936, the Hollywood Development & Harbor Co., was dissolved on proceedings under signature of Secretary of State and the Great Seal of the State of Florida. This was a matter of record in Broward County, October 29, 1936.

On April 12, 1937, the City of Ft. Lauderdale sold to City & County Holding Co. said tax certificates No. 3367 and No. 3370. Said tax certificates were sold by City & County Holding Co. to Mutual Holding & Investment Co.

On April 20, 1937, Mutual Holding & Investment Co. applied to the clerk of the circuit court for issuance of tax deed No. 2049 on said certificates. Notice of application for tax deed was published April 23, 30 and May 7 and 14, 1937, in the Hollywood Herald, published in Hollywood, Florida. Notice of the application for tax deed was given the Hollywood Development & Harbor Co., by registered mail, May 15, 1937, and was received on May 17, 1937. Two notices were sent to Capt. T. Hall, by registered mail to different addresses in Florida, but both were returned because the addresses given did not reach him.

The tax sale was had on June 1, 1937, at which sale the Mid-Century Investment Co. was the highest and successful bidder, bidding $4700.00, which was $32.25 in excess of the amount required for redemption.

On January 25, 1938, the clerk of the circuit court wrote to Hollywood Development & Harbor Co., inquiring what disposition it wished to make of the overplus. At its request, the overplus of $32.25 was paid to the Hollywood Development & Harbor Co. by check of the clerk, dated January 28, 1938. The sum of $4667.75 was remitted by the clerk to the Mutual Holding & Investment Co.

On June 8, 1937, tax deed on said land issued by the Clerk of the Circuit Court to Mid-Century Investment Co. for the sum of $4700.00.

On June 30, 1937, the property was conveyed by Mid-Century Investment Co. to Rachel Beaty by deed.

On February 9, 1938, Rachel T. Beaty and husband conveyed an undivided one-half interest in said property to Roberta S. P. Horton.

On June 17, 1938, Capt. T. Hall, assigned the mortgage on said property to Inlet Beach, Inc., which

assignment was recorded June 28, 1938. The law firm of Botts & Field held possession of the notes because of a lien claimed by them for legal services performed for Capt. T. Hall in the past.

On July 25, 1938, Inlet Beach, Inc., instituted proceedings against Hollywood Development & Harbor Co. (cause No. 8205) to foreclose said mortgage on said property. Final decree was rendered April 15, 1940. Master's sale was held May 6, 1940 at which plaintiff Inlet Beach, Inc. bid $200,000.00. On May 17, 1940, special master's deed issued to Inlet Beach, Inc. The sale was confirmed on the same date.

Then on June 20, 1940, Inlet Beach, Inc., a Florida corporation, instituted this suit (cause No. 8807) against Mid-Century Investment Co., a Florida corporation, Rachel T. Beaty and David Beaty, her husband, residents of Pennsylvania and Roberta S. B. Horton and Lucien Horton, her husband, residents of Maine, praying that plaintiff be decreed to be the owner of "all of Government Lot Six (6) and the South Fifteen (15) Chains of Government Lot One (1), Section Thirteen (13), Township Fifty (50) south, Range Forty-two (42) East Broward County, Florida."; and that title be forever quieted and confirmed in plaintiff. Other incidental matters in the prayer for relief related to payment by plaintiff to defendant of certain tax moneys; the cancellation of said tax deed; that all rights of defendants and those claiming under them in said property be held for naught; that defendants be restrained from ever claiming any right to said property or any part thereof; and prayer for general relief.

The bill alleged that plaintiff is owner in fee simple of said property as described above. Title was traced

from the U. S. Government Patent on that part of Government Lot 1 claimed, and from the deed of the Trustees·of the Internal Improvement Fund on Government Lot 6. The important transactions insofar as this case is concerned are: (1) The deed from Capt. T. Hall to the Hollywood Development & Harbor Co., dated March 6, 1925, conveying all of the property in question; (2) the mortgage given back to Capt. T. Hall on the same date to secure the balance of the purchase price; (3) the assignment of the mortgage from Capt. T. Hall to Inlet Beach, Inc., on June 17, 1938; (4) and the master's deed from Norman Abbott, special master to Inlet Beach, Inc., dated May 17, 1940, said deed being issued by virtue of the foreclosure of said mortgage.

The bill also alleged that on June 8, 1937, Mid-Century Investment Co., acquired a tax deed on said property; that on June 30, 1937, said Mid-Century Investment Co. conveyed said property by quit claim deed to Rachel T. Beaty; that on February 9, 1938, Rachel T. Beaty and husband conveyed an undivided one-half interest in said property to Roberta S. B. Horton.

The bill further alleged that said tax deed executed by the City of Ft. Lauderdale to Mid-Century Investment Co. is invalid and that Rachel T. Beaty and Roberta S. B. Horton acquired no title or interest in or to said property by reason of their several deeds; that said tax deed issued on tax sale certificates No. 3367 and No. 3370, that said tax deed is invalid because; (1) tax certificate No. 3370 was issued by the City of Ft. Lauderdale for non-payment of taxes on Government Lot 6, Sec. 13, Twp. 50 S., R. 42 E., for the year 1928, and was sold at public auction July 1,

1929; that said lot in the three years 1928 and 1929 was not within the municipal limits of the City of Ft. Lauderdale, and the City had no authority to assess taxes against said lot. (2) No notice as required by statute, was given by the clerk to either the owner or the mortgagee of said property, of application for tax deed; that said notice is jurisdictional, without which said tax deed is void; that said tax deed is a cloud on plaintiff's title; that defendants are not in possession of said property. The bill went to great length to show exactly what was done about the giving of notice.

The bill also alleged that plaintiff has offered to pay defendants the money expended in acquiring the tax deed with interest thereon, which offer was refused; but the offer is now renewed and plaintiff is ready, able and willing to pay any sum the court finds is due defendants or either of them.

Lis pendens was filed the same day the bill was filed. Plaintiff, by its agent, J. W. Hamm, tendered the clerk of the circuit court check for $4,667.75, as earnest money, and payment was stopped on said check soon after its tender.

Upon several motions to dismiss and to strike by the defendants Rachel T. Beaty and husband, Roberta S. B. Horton and husband, and Mid-Century Investment Co., the Court denied them all and allowed plaintiff to amend by striking the word "probably" from the bill. It was ordered that Mid-Century Investment Co., by filing a disclaimer to the property should be dismissed as defendant.

The answer of defendants denied material allegations of the bill of complaint, and set up counter averments as to other allegations in the bill. Some of the

counter-averments were that plaintiff had no right or capacity to institute this suit as it did not have title to the lands in question; that said tax deed issued to Mid-Century Investment Co. is not an invalid deed, but a valid conveyance of title to said property; that part of said property (Government Lot 6) was within the City limits of Ft. Lauderdale in the years 1928 and 1929; that tax certificates for the years 1930-1935 inclusive were included in said tax deed; that the clerk of the circuit court did all things necessary with reference to mailing notice to the mortgage holder, Capt. T. Hall; that Capt. T. Hall did not register any address with the clerk of the circuit court as provided for by law; that Capt. T. Hall was not entitled to any notice; that the notice required by law was sent to Hollywood Development & Harbor Co., and said company had not been dissolved when said notice was sent, and if so, the stockholders received such notice; that on January 28, 1938, the clerk of the circuit court isued his check for $32.25 to Hollywood Development & Harbor Co., this being the surplus paid by Mid-Century Investment Co., purchaser at the tax sale, after reimbursing the company surrendering the tax certificates together with costs and expenses, said check was cashed and contained the following endorsement: "Hollywood Development and Harbor Company; New River Enterprises, Inc. (Owner of the capital stock of Hollywood Development and Harbor Company); The Highway Construction Company of Ohio, Inc. (assignee of New River Enterprises, Inc.); Hollywood Inc., assignee of The Highway Construction Co. of Ohio, Inc. By W. M. Smith, Treasurer."; and this endorsement estops Hollywood Development & Harbor Co. from setting forth any attempted de-

fenses set forth in the last part of sub-paragraph 2 of paragraph 4 of the bill, and that plaintiffs in this suit are likewise estopped from claiming any irregularities so alleged in the bill; that plaintiff has not paid into the Court's registry any sum to designate its ability to pay the sum found due defendants.

After the evidence was presented and the argument of counsel heard, the Court, on April 12, 1941, filed what it styled an "opinion," at the conclusion of which it stated: "Let counsel for plaintiff prepare and present a decree in accordance with this opinion."

On April 22, 1941, plaintiff filed a motion for final decree, in which it was stated that plaintiff had tendered $6800.00 to defendants' attorneys, which the court in its opinion found to be due defendants, but said attorney refused to accept the same on the sole ground that defendants would probably be appealing and would not accept any sum of money from plaintiff. Plaintiff's agent made an affidavit to that effect.

On April 22, 1941; final decree was entered, finding that plaintiff made a tender of money to attorneys for defendants, of the amount provided for in the Court's opinion, and the tender was refused; and decreed that plaintiff is the owner in fee simple as against defendants of the property described as "All of Government Lot Six (6) and the South Fifteen (15) Chains of Government Lot One (1), Section Thirteen (13), Township Fifty (50) South, Range Forty-two (42) East, Broward County, Florida"; That the following deeds be cancelled and the clerk so note on his books:

(a) Tax deed from the City of Ft. Lauderdale to Mid-Century Investment Co., dated January 7, 1937, purporting to convey the following described property:

"S. 15 Chs. less N.200' Gov. Lot 1, Section 13, Township 50 South, Range 42 East. 6 acres. Gov. Lot 6, Section 13, Township 50 South, Range 42 East. 8.75 acres."

(b) Quit-claim deed from Mid-Century Investment Co. to Rachel T. Beaty, dated January 30, 1937, purporting to convey the following described property: "The South (S) Fifteen (15) chains, less the North (N) Two Hundred (200) feet thereof, of Government Lot One (1), Section Thirteen (13), Township Fifty (50) South, Range Forty-Two (42) 'East, containing six (6) acres, more or less, and all of Government Lot Six (6), Section Thirteen (13), Township Fifty (50) South, Range Forty-two (43) East, containing 8.75 acres, more or less."

(c) Fee simple deed from Rachel T. Beaty and David Beaty her husband to Roberta S. B. Horton, dated February 9, 1938, purporting to convey the following described property: "An undivided one-half interest in and to the South (S) Fifteen (15) chains, less the North (N) Two Hundred (200) feet thereof, of Government Lot One (1), Section Thirteen (13), Township Fifty (50) South, Range Forty-two (42) East, containing Six (6) acres, more or less, and all of Government Lot Six (6) of Section Thirteen (13), Township Fifty (50) South, Range Forty-two (42) East, containing 8.75 acres, more or less." That all right, title, interest, claim or demand of defendants in and to said described property are removed, vacated and annulled as clouds on plaintiff's title; that plaintiff's title in and to said property is hereby quieted and established as against defendants and all persons claiming under them subsequent to the institution of this suit and the filing of lis pendis; that defendants

and all persons claiming under them since the institution of this suit and the filing of lis pendens be enjoined from asserting any right, title, claim and demand in and to aforesaid lands and each part thereof; that plaintiff pay to the defendants entitled thereto, upon their demand, the amount of money provided by the "opinion" of April 10, 1941, to take their receipt therefor and file the same in the records of this cause.

Defendants filed a motion to vacate the final decree and for a stay order. The court stayed the cause for five days, and ordered the clerk to withhold recording the final decree from the chancery order book, and to refrain from cancelling the deeds of record referred to in the final decree, until further order of the court.

Plaintiff filed a reply to said motion and prayed that the stay order be vacated, and that the final decree entered herein be recorded.

Plaintiff made tender of $6800.00 into the registry of the court, with the reservation that if the cause be appealed, plaintiff may challenge the correctness of the court's opinion requiring this payment to be made defendants, and plaintiff may file any cross assignments of error it may desire to challenge the correctness of the court's opinion requiring it to reimburse defendants for such items as plaintiff believes are not properly taxable against it.

On May 5, 1941, the Court entered an order directing the clerk to record the final decree as of the date it was entered, and to defer making any notation on the deed records, until disposition by the Court of defendants' petition or petitions filed or to be filed on May 9, 1941.

Petition for rehearing was filed May 9, 1941, and, upon motion, the Court ordered that defendants' attorneys be given until May 26, 1941, to have hearing on said petition.

On May 12, 1941, defendants filed an amendment to their petition for rehearing.

On June 23, 1941, the Court rendered a supplemental opinion and order denying the motion to vacate and set aside the final decree; and modifying the final decree to the extent that should the parties be unable to agree on the sum to be paid, the court would hear and determine the matter, the court retaining jurisdiction to dispose of all matters not determined by said final decree.

Rachel T. Beaty and David Beaty, her husband, and Roberta S. B. Horton and Lucien Horton, her husband, took an appeal from the decree and from the order of June 23, 1941.

The first point presented is, whether the right to challenge the validity of a tax deed is personal and restricted to the owner of the lands at the time of the issuance of the tax deed or whether it is assignable?

Under this question appellant cites Sec. 1020 C.G.L., which was Section 2 of Chapter 12409; Acts of 1927; which is as follows:

"When the holder of a tax deed goes into actual possession, occupancy and use of the land embraced in such tax deed, and so continues for a period of four years, no suit for the recovery of the possession thereof shall be brought by a *former owner* or *other adverse claimant,* unless such suit be commenced within, or prior to, the said period of four years after the holder under such tax deed has entered into the

actual possession, occupancy and use of the land embraced in said tax deed; . . ." (emphasis supplied).

The language used in this statute indicates that the *former owner* or *other adverse claimant* which includes assignee as well as others, might bring suit for recovery of the land if brought within the period of limitations. There seems to be no reason for supposing that assignees might not institute suit for recovery.

This statute provided that no suit can be brought for the recovery of the land after four years from the time the tax deed holder has gone into possession. This statute is not applicable here because four years had not elapsed between the date of the entry into possession by the holder of the tax deed, and the filing of the bill to quiet title. In Klich v. Miami Land & Development Co., 139 Fla. 794, 191 So. 41, we held that even the four year limitations did not apply where lands were assessed for taxes by a town and the lands had never been legally incorporated therein.

The second point for consideration is whether plaintiff, Inlet Beach Co., has good title? This involves the foreclosure proceedings in chancery cause No. 8205.

Under this point, appellants attempt to show that the proceedings in the mortgage foreclosure were inadequate in that (1) the owner of the property was not properly served with process, (2) lack of jurisdiction over the subject matter, and (3) failure to follow orderly procedure.

In attacking the final decree of foreclosure, it must be remembered that it is a final decree that has become absolute because the time for taking appeal has passed. Even though a final decree may be attached collaterally when it is void, which is where jurisdic-

tion was never acquired, yet such collateral attack must be raised in the pleadings in such manner as will justify the court below in determining the matter, and such attack must be made by one having an interest in the matter. The contention that the owner of the property was not properly served in the foreclosure suit should not be heard because the owner is not complaining, and no one claiming under the owner is complaining. The complaint comes from the tax deed holder and its assignees, who are holding adversely to the owner. There is no claim that the tax deed holder, Mid-Century Investment Co., and the assignees Beaty and Horton were not before the Court in the foreclosure proceeding. They were all before the Court in the foreclosure proceeding; the Court there foreclosed the mortgage and dismissed the Mid-Century Investment Co., and the Beatys and Hortons without prejudice to either plaintiff or defendants there to assert the validity or invalidity of the tax deed and subsequent deeds issued thereon in any subsequent proceeding. So appellants cannot be heard to complain about the proceedings in the foreclosure cause.

There is no merit in the contention that Capt. T. Hall had abandoned the mortgage, because he instituted an action at law on the notes and failed to prosecute it to conclusion; and because he instituted foreclosure preceedings on the mortgage, which proceedings were later dismissed for failure to prosecute. Neither of these actions on the part of Capt. T. Hall indicated an intention to abandon the security afforded by the notes and mortgage; and any claim to that

effect is without merit. Neither was there, by this conduct, an election of remedies.

The contention that the assignment of the mortgage did not also carry an assignment of the notes is without merit. Botts & Field, attorneys in Miami, held possession of the notes because they claimed a lien on them for legal services furnished Capt. T. Hall. The firm did not claim to own the notes. When foreclosure of the mortgage was begun Botts & Field joined in asking for it, so they could get their fee, which they later did.

The third point for consideration is, whether these lands were subject to taxation by the City of Ft. Lauderdale in 1928.

It is contended that Government Lot 6 was not within the limits of the City of Ft. Lauderdale in the year 1928.

The corporate limits of the City of Ft. Lauderdale were defined by Chapter 10552, Acts of 1925, and since there was no express statutory authority to enlarge the boundaries by municipal ordinance, the attempt to do so, so as to include Government Lot 6 within the limits of the City, was a nullity. See State v. City of Homestead, 100 Fla. 354, 130 So. 28; Klich v. Miami Land & Development Co., 139 Fla. 794, 191 So. 41. See Cooley on Taxation 4th Ed. Vol. 3, Sec. 1068 et seq.

A validation Act cannot validate a lack of power in the municipality to act in the first instance. That power must first exist, and then be improperly exercised, in order for a validation Act to become effective. The validation Acts referred to in the brief of appellants could not have the effect of taking Government Lot 6 into the limits of the City of Ft. Lauderdale

because there was no authority to do so by municipal ordinance. Chapter 12739, Acts of 1927, related to validating certain obligations of the City of Ft. Lauderdale; and Chapter 12740, Acts of 1927, related to validating certain tax assessments and levies of the City of Ft. Lauderdale.

Chapter 12742, Acts of 1927, providing for a referendum for the extension of the boundaries of the City of Ft. Lauderdale became a law by approval of the Governor April 27, 1927, but was not to become effective until a referendum was held according to the terms in the Act. It was specifically repealed by Chapter 12741, Acts of 1927, which also provided for a referendum to extend the boundaries of the City of Ft. Lauderdale as defined in the Act. The referendum election held under Chapter 12741, resulted in a defeat for the extension of the boundaries. Thus Chapter 12742 never became effective. Even if this revived Chapter 12742, Acts of 1927, (which we do not hold because not necessary), the time allotted for holding the referendum under Chapter 12742 had expired before the referendum under Chapter 12741 was held, and by its own terms (Chapter 12742) it could never become effective.

Thus, the 1928 taxes levied on Government Lot 6 by the City of Ft. Lauderdale were not levied with authority of law, and any tax deed predicated on such tax certificate would be void.

The fourth point is whether notice of application for tax deed was given to the owner of the property.

The statutes applicable to this inquiry are: Sec. 999 (137) C.G.L., Perm. Supp., 1936, which provides for the publication of notice of application for tax deed, in a newspaper in the County for four successive

weeks (four publications each one week apart); or, if there is no newspaper in the County, then the notice may be posted for the same length of time on the court house door and at two other places in the county. The statute sets out the form of the notice.

Sec. 999 (138) C.G.L. Perm. Supp., 1936, provides for the proof of publication of said notice.

Sec. 999 (139) C.G.L., Perm. Supp. 1936, provides in part:

". . . the Clerk . . . shall mail a copy of such notice to the owner of the property, if the address of such owner be known to the clerk; . . . and the clerk shall make out and attach to the affidavit of the publisher, . . ., a certificate that he, the clerk, did on the . . . (insert date), mail a copy of the notice addressed to ————, at ————.

"In the event the owner's address is unknown to the Clerk, the latter shall execute and attach to the proof of publication a certificate to the effect that the address of the owner is unknown to him. The failure of the owner to receive the notice mailed by the clerk shall not affect the validity of the tax deed issued pursuant to such notice.

"The notice referred to in this section may be sent any time not later than the twentieth day of the month preceding the sale, and a printed copy of the notice as published in the newspaper shall be sufficient."

Under the fourth point it is contended not that the notice was not sent to the Hollywood Development & Harbor Co., but that when the notice was sent the corporation had been dissolved (dissolution occurring September 14, 1936), and that legal title to the property of the corporation thereafter vested in the directors of the corporation as trustees for the

property. This is provided for by Sec. 5977 (20) C.G.L. Perm. Supp. 1936, being Sec. 9 of Chapter 16880, Acts of 1935. Chapter 17804, Acts of 1937 was not enacted when notice of application for tax deed was sent out.

The notice was sent to Hollywood Development & Harbor Co. and was receipted for as follows: "Hollywood Development & Harbor Co., c/o Hollywood, Inc., by J. Anderson." The record discloses that J. Anderson was secretary to C. R. Gilliland, a director of the Hollywood Development & Harbor Co.

Under this statute, Sec. 5977 (20) C.G.L., Perm. Supp. 1936, the notice of application for tax deed should have been mailed to the directors of the corporation and not to the corporation itself. The contention is well taken. See the cases of McClung v. Hill, 96 Fed. (2nd) 236; and Lyman v. Smith, 137 Fla. 310, 188 So. 337, for an interpretation of the effect of this statute, Sec. 5977 (20) C.G.L. Perm. Supp., 1936. It is jurisdictional that the notice of application for tax deed be mailed to the owner of the property at the time application is made, if the address is known to the clerk. If it is unknown, he should so certify. See Jernigan v. Harrison, 136 Fla. 320, 186 So. 511, third headnote. Whether the notice is received or not is not material to the validity of the tax deed.

The fifth point for consideration is, whether or not the required notice of application for tax deed was given the mortgagee, Capt. T. Hall.

With regard to mortgagees, Sec. 999 (139) C.G.L. Perm. Supp., 1936, provides that the clerk shall mail "a copy of such notice to the holder of each mortgage which appears of record against said property, if the

address of such mortgage holder be known to the clerk."

This statute, Sec. 999 (139) C.G.L. Perm. Supp. 1936, provides that if the owner's address is unknown to the clerk, he shall execute and attach to the proof of publication a certificate to the effect that the owner's address is unknown to him. This is not required in the case of a mortgagee. If the address of a mortgagee is unknown to the clerk, he just doesn't send him a notice and that is all. If an old address is used, (if that is the latest information as to address available in the clerk's office), it should satisfy the statute, even though the notice comes back because of insufficient address.

The clerk should not be compelled to go beyond the records in his own office to ascertain the address of a mortgagee, when giving notice of an application for a tax deed. The addresses given for the mortgagee in this case were procured outside the clerk's office, and even though they were not his address at the time application was made for tax deed, the clerk went beyond his own records to try to ascertain the address of the mortgagee and should not be required to do more. There is nothing in this record to indicate that the clerk could, from his own records, have furnished a more accurate address of the mortgagee.

Sec. 1003 (8) C.G.L. Perm. Sup., 1936, provides that any *owner of land* or *anyone claiming a lien on any land,* whether a resident of the county or State or a non-resident, may cause his, her or its *name* and *address* and a *description of the land* within the county, in which he, she or it is interested, to be recorded in a book provided for that purpose, upon payment to the clerk of a fee of 25c. In view of this

statute, it appears that the onus is placed on the mortgagee to make his address known to the clerk by making it a part of his records; and it is not the duty of the clerk to go beyond the records in his office to locate such address when giving notice of application for tax deed. The chancellor erred in holding that the mortgagee should have been given notice under these circumstances. But the error was harmless in this instance as the tax deed was void on other grounds hereinbefore discussed.

The Sixth point is, whether or not the court erred in setting aside the tax deed without making adequate provision for protection of the lien created by Sec. 1026 C.G.L. in favor of a tax deed holder.

Sec. 1026 C.G.L. is as follows:

"If in any suit at law or in equity involving the validity of any tax deed it shall be held by the court that said tax deed was invalid at the time of its issuance and that title to the land therein described did not vest in the tax deed holder, then if the taxes for which said land was sold and upon which said tax deed was issued had not been paid prior to the issuance of such deed, the party in whose favor the judgment or decree in such suit shall be entered, shall pay to the party against whom such judgment or decree shall be entered, shall pay to the party against whom such judgment or decree shall be entered the amount paid for such tax deed and all taxes paid upon said land, together with twenty-five per cent interest thereon for the first year and eight per cent interest thereon for the time after the first year and all legal expenses in obtaining said tax deed, including publication of notice and clerk's fees for issuing and recording such tax deed, also the fair cash value of all permanent

improvements made upon said land by the holder during the life of said tax deed. The amount of such expenses and the fair cash value of improvements, as aforesaid, shall be ascertained and found upon the trial of the suit, and for which such tax deed holder shall have a prior lien upon said land for the payment of said sums of money in full."

The appellants in this case were entitled to a lien based on the items set forth in the statute above quoted in the sum of taxes assessible and assessed against the property (but not for the amount of taxes which may have been assessed without any authority of law), until such amounts were satisfied in full. The lien was not asked for in the answer, so the court cannot be said to have erred in not including such lien in the final decree. However, since the statute, Sec. 1026, C.G.L., gives a lien, to enforce recovery of the amount of the taxes assessed pursuant to authority of law and which though irregularly assessed were paid by appellant, the way is left open for the appellants to ask the court below that the final decree be amended to give them a lien on the land until the amounts due them be paid in full.

The final decree is affirmed without prejudice to the appellants to apply to the court below for a supplemental decree embracing the impressing of a lien for such amount as the record may show them entitled to have under the provisions of Sec. 1026, supra.

It is so ordered.

WHITFIELD, CHAPMAN, and THOMAS, JJ., concur.

BROWN, C. J., TERRELL and ADAMS, JJ., dissent.