862 So.2d 793 (2003)
LAWYERS TITLE INSURANCE COMPANY, INC., Appellant,
v.
NOVASTAR MORTGAGE, INC., d/b/a Novastar Mortgage, Austin W. Mills, III, Mary Mills, Aurora Loan Services, Inc., and Option One Mortgage Corporation, Appellees.
Nos. 4D02-3039, 4D02-4684.
District Court of Appeal of Florida, Fourth District.
November 26, 2003.
Rehearing Denied January 28, 2004.
*794 Robert A. Cohen and Mario M. Ruiz of Cohen/Fox, P.A., Miami, for appellant.
Gregg W. McClosky and David J. Pascuzzi of McClosky, D'Anna, Ioannou & Dieterle, LLP, Boca Raton, for appellee Novastar Mortgage, Inc., d/b/a Novastar Mortgage.
ANDREWS, ROBERT LANCE, Associate Judge.
Lawyers Title Insurance Company appeals a final judgment allowing policy coverage for NovaStar Mortgage, Inc. ("Novastar").[1]
Novastar is a nonconforming wholesale mortgage lender that buys and sells mortgage loans from challenged credit borrowers. Novastar had a mortgage warehousing arrangement with Netwide Funding Corp. ("Netwide"),[2] whereby Novastar extended a secured line of credit to Netwide to facilitate Netwide's origination of mortgage loans. On or about July 6, 1998, Rosalba Serrano ("Serrano") purchased a parcel of real property located in Palm Beach County, Florida. In connection with her purchase of the property, Serrano secured a mortgage loan from Netwide for $174,200, and executed a note and mortgage in favor of Netwide. The loan to Serrano had been pre-approved by Novastar. Pursuant to the mortgage warehousing agreement between them, Netwide endorsed the note to Novastar and executed *795 an assignment of the mortgage to Novastar. The mortgage and the assignment of mortgage were both recorded on July 13, 1998. Appellant issued a title policy to Novastar on the same day.
After the closing of the Serrano loan, Netwide sent a closing package to Novastar that included the original mortgage and assignment. The parties are in dispute as to whether Novastar ever physically received the original note. Novastar then submitted the loan to its quality control department for an audit. The audit revealed that Serrano had made material misrepresentations concerning her employment, income, and social security number. Novastar became concerned the loan was too risky. It notified Netwide that there was a problem with the Serrano loan and consequently Novastar was not going to buy the loan. It instructed Netwide to resell the loan so that Novastar could recoup its money.
Netwide sold the loan to BNC on July 28, 1998, struck through its endorsement of the note to Novastar and marked it "canceled," and then endorsed the note to BNC and executed an assignment of the mortgage to BNC. After selling the note to BNC, Netwide failed to repay Novastar. BNC subsequently endorsed the note and assigned the mortgage to Aurora Loan Services, Inc. ("Aurora") on July 31, 1998.
On September 30, 1998, Serrano sold the property to Austin and Mary Mills and received a pay-off statement from Option One Mortgage Corporation. The pay-off statement indicated payment should be made to Aurora. Serrano made the payment, and the property was transferred to the Mills. First National Title Company served as settlement agent for the sale. First National paid Aurora even though a title search showed that Novastar had a senior lien on the property.
Around August 1998, Novastar requested the original note from Netwide. Novastar learned that the note had been sold by Netwide; however, Novastar did not inquire as to the identity of the purchaser, or take any other action on the note. Relying on Netwide's promises to pay, Novastar pursued Netwide for repayment. However, Netwide never paid Novastar and ultimately went out of business. Novastar then filed a claim under its title insurance policy with appellant for recovery of its loss. Appellant denied the claim stating that: 1) the loss was not covered under the policy; 2) Novastar did not suffer a loss due to the failure of title; and 3) Novastar did not own the note. Consequently, Novastar filed a three-count amended complaint against the parties involved. Count I was a mortgage foreclosure against the Mills' successors-in-title, James and Euphemia Strassberger. In Count II Novastar sought a declaratory judgment against appellant. Count III alleged civil liability for violation of the Mortgage Brokerage and Mortgage Lending Act against Netwide and its principals, Paul Aguirre and Craig Smith. The Strassbergers filed a third-party complaint against Aurora for indemnification, misrepresentation, and unjust enrichment. Aurora filed a fourth-party complaint against Netwide.
After a bench trial, the court entered two final judgments. The first was against Novastar on Count I and in favor of Novastar on Count III. Regarding Count III, a judgment of default was entered and Novastar was awarded $245,232.11 in damages. The second final judgment, at issue in this appeal, found in favor of Novastar on Count II, entering a declaratory judgment against appellant. As a result, Novastar was awarded $245,232.11, plus interest against appellant. Appellant moved for rehearing, relief from judgment, and *796 remittitur. The trial court denied the motions and appellant appealed.
Soon after, the parties to this appeal and the Strassbergers mediated the issue of Novastar's attorneys' fees and costs. A settlement was reached and an agreed final judgment was entered by the trial court whereby Novastar would receive $135,200.00 in attorney's fees and costs from appellant. The trial court noted in its order that appellant could appeal the trial court's decision on Novastar's entitlement to attorneys' fees. Appellant did, in fact, appeal the trial court's order.
Appellant argues that the trial court erred in finding coverage under the title policy because Novastar's claim does not fall within the grant of coverage since the alleged defect came into existence subsequent to the date of policy, and that additionally, the loss is precluded by policy exclusions. Novastar, in turn, argues that the trial court properly found coverage because Novastar never received the original note from Netwide, and this wrongful retention of the original note caused the unenforceability of the mortgage.
The insurance policy was issued on July 13, 1998, the same date Novastar recorded the note and mortgage. The policy, which governs the rights and liabilities of the parties provided:
SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE COMPANY, a Virginia corporation, hereinafter called the Company, insures as of Date of Policy shown in Schedule A, against all loss or damage, not exceeding the Amount of Insurance state in Schedule A, sustained or incurred by reason of:
1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of title;
4. Lack of a right of access to and from land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon title.
The policy also contained exclusions from coverage including, but not limited to the following:
3. Defect, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant;
(d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material)
The trial court found that Novastar was entitled to coverage under the policy because its loss resulted from the "invalidity or unenforceability of the lien." The trial court held Novastar's mortgage lien was unenforceable due to the wrongful deprivation by Netwide of the original note. The trial court further found Novastar was unable to enforce its mortgage lien because it never properly obtained the original note; that the unenforceability of Novastar's mortgage lien did not arise by reason of defect, lien, encumbrance, adverse claim or matter created, suffered, assumed or agreed to by Novastar subsequent to the date of the policy; and Netwide's wrongful retention of the original note preceded or was coincident with the date of the policy.
It is well-settled that a trial court's ruling comes to this court clothed with a presumption of correctness and the burden *797 is on appellant to demonstrate error. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979); see also Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993) (recognizing that a trial court's decision in a declaratory action is accorded a presumption of correctness). A trial court's findings of fact in a declaratory judgment action will be upheld if supported by competent substantial evidence. See Collier v. Parker, 794 So.2d 616, 618 (Fla. 1st DCA 2001). Conversely, any conclusions of law are reviewed de novo. See Panama City Beach Cmty. Redevelopment Agency v. State, 831 So.2d 662, 665 (Fla. 2002); First Union Nat'l Bank v. Turney, 824 So.2d 172, 185 (Fla. 1st DCA 2001).
Section 624.608, Florida Statutes (1997), defines title insurance as: "insurance of owners of real property or others having an interest in real property or contractual interest derived therefrom, or liens or encumbrances on real property, against loss by encumbrance, or defective titles, or invalidity, or adverse claim to title." While most insurance is protection against future occurrences such as fire or accident, title insurance is protection against future loss because of past events. See Livingston v. Am. Title & Ins. Co., 133 So.2d 483, 486 (Fla. 1st DCA 1961).
Generally, title insurance policy coverage for loss or damage from the invalidity or unenforceability of a lien or an insured mortgage insures against defects in the mortgage itself, but not against problems arising from, or related to, the underlying debt. See Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1582 (11th Cir.1995). "A mortgagee's title policy protects that mortgagee against certain risks related to the validity of the mortgage itself, such as fraud, incompetency of the mortgagor, or failure to properly execute the mortgage." Id. at 1583. Instances which give rise to a claim under title insurance include where it was found that there was a forgery in the execution of the mortgage, see Ferrell v. Inter-County Title Guaranty & Mortgage Co., 213 So.2d 518 (Fla. 3d DCA 1968); where the mortgagor has been previously adjudged incompetent, see Citicorp Savings of Illinois v. Stewart Title Guaranty Co., 840 F.2d 526 (7th Cir.1988); or where there was a lien on the real property because the mortgagor previously had conveyed the property to another, see Henningsen v. Title & Trust Co., 151 Or. 318, 49 P.2d 458 (1935).
A title insurer will not be held liable for loss resulting merely from the invalidity of the debt, the unenforceability of the note, or the obligor's failure to repay the debt underlying the insured mortgage. See JDC (Am.) Corp.; Bank of Miami Beach v. Fid. & Cas. Co. of N.Y., 239 So.2d 97, 100 (Fla.1970) (holding that because a mortgage lien and a mortgage debt are two entirely different concepts, a mortgagee's loss was not found to be within the coverage of title insurance policy where mortgagors legally and properly executed the mortgage, but the mortgagors' son forged their signatures on the note, rendering the note invalid, as this fact did not extinguish the debt or invalidate the mortgage lien). It has further been found that title insurance does not provide coverage for errors in disbursing monies, see Mark Twain Kansas City Bank v. Lawyers Title Insurance Corp., 807 F.Supp. 85 (E.D.Mo. 1992); or where an assignee of a mortgagee suffers a loss because the mortgagee wrongfully paid the mortgagor from a checking account with insufficient funds, see Gerrold v. Penn Title Insurance Co., 271 N.J.Super. 50, 637 A.2d 1293 (App.Div. 1994).
*798 In the matter herein, the trial court erred in finding Novastar's mortgage lien was unenforceable due to the wrongful retention of the original note by Netwide. The law is clear that the absence of a note does not make a mortgage unenforceable. See Thomas v. Thomas, 96 So.2d 771, 773 (Fla.1957) (finding the mere absence of a promissory note evidencing a debt did not prohibit a holding that the transaction was a mortgage arrangement); Crum v. U.S. Fid. & Guar. Co., 468 So.2d 1004, 1007 (Fla. 1st DCA 1985) (a one-month period between the execution of mortgage and the corresponding promissory note does not render the mortgage unenforceable for lack of consideration); see also First Am. Bank of N.Y. v. Sloane, 235 A.D.2d 656, 651 N.Y.S.2d 734 (1997) (finding a mortgage is not invalidated by the absence of the note or bond manifesting the debt). Here, it is undisputed the mortgage and note executed by Serrano in favor of Netwide was valid and enforceable. As owner and possessor of the note, Netwide had the right to enforce the mortgage lien. Netwide assigned all of its rights, title, and interest to the mortgage, together with the notes therein described, the money due and to all rights accrued under the mortgage. It is well-established that an assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned. See Deakter v. Menendez, 830 So.2d 124, 129 (Fla. 3d DCA 2002). Upon the assignment from Netwide, Novastar had the right to enforce the mortgage and note, notwithstanding the fact that the note was not delivered to Novastar. See Beaty v. Inlet Beach, 151 Fla. 495, 9 So.2d 735, 741 (1942) (finding that mere fact that notes secured by a mortgage are in possession of other persons than assignor of a mortgage does not in and of itself support contention the assignment of the mortgage did not also carry assignment of notes); Slizyk v. Smilack, 825 So.2d 428, 430 (Fla. 4th DCA 2002) (holding that assignment by first husband, who was in possession of notes, to second husband, gave second husband right to foreclose mortgage despite his inability to produce original note and mortgage).
Furthermore, while it is true under Florida law that delivery is necessary to validate a negotiable instrument, "Florida courts recognize constructive delivery as a sufficient form of delivery." Harmony Homes, Inc. v. United States, 936 F.Supp. 907, 913 (M.D.Fla.1996) (citations omitted). "Delivery of a written assignment of an instrument has been held effective as a constructive delivery without delivery of the negotiable instrument itself." Id. (citations omitted). An assignee of a mortgage and note assigned as collateral security is the real party in interest, holds legal title to the mortgage and the note, and is the proper party to file suit to foreclose the mortgage. Id. at 914. In the instant case, there has been no allegation that the assignment from Netwide to Novastar was ineffective. As such, the assignment constituted constructive delivery of the note, making Novastar a person entitled to enforce the note, even without physical possession.
As the owner of the note, whether it was lost or wrongfully retained by Netwide, Novastar could have sought to reestablish the note pursuant to Florida statutes. A party may enforce its rights by reestablishing the lost, stolen, or destroyed paper or instrument under the applicable statutes and then sue upon the reestablished instrument. See § 71.011, Fla. Stat. (2003). Instruments that may be reestablished include notes secured by mortgages, see Lovingood v. Butler Construction Co., 100 Fla. 1252, 131 So. 126 (1930); and *799 promissory notes, see Bigelow v. Summers, 28 Fla. 759, 9 So. 690 (1891).
Moreover, in the case of a lost, stolen, or destroyed negotiable instrument, a party may enforce the negotiable instrument without reestablishing it. See § 673.3091, Fla. Stat. (2003). Pursuant to this statute, an owner of a lost, stolen, or destroyed instrument may maintain an action to recover upon the note by showing proof of his or her ownership, facts that prevent the owner from producing the instruments, and the terms of the instrument, without first reestablishing the instrument. See Dunn v. Willis, 599 So.2d 271 (Fla. 5th DCA 1992); Gutierrez v. Bermudez, 540 So.2d 888 (Fla. 5th DCA 1989); Barber v. Ehrich, 394 So.2d 220 (Fla. 5th DCA 1981); see also Deakter, 830 So.2d at 128 (finding that a party seeking to enforce an instrument need not have physical possession of the instrument when the loss occurred).
Here, although there were remedies available to Novastar, it took no action, either to reestablish the note or to directly enforce it. It is undisputed that Novastar rejected the loan and agreed that Netwide should sell the loan to another "takeout investor." Netwide did indeed sell the loan to BNC, cancelled its endorsement to Novastar, and endorsed it to BNC. Novastar, however, never asked to whom Netwide sold the loan, but continually relied on Netwide's assurances regarding repayment. BNC assigned the mortgage and the note to Aurora for value and transferred physical possession of the note to Aurora. Aurora took the note in good faith and without notice that it was overdue, had been dishonored, contained an unauthorized signature, had been altered, or of any claim or defense to the note on the part of any party. As such, Aurora was the holder in due course of the note.
Unable to recover payment from Netwide, Novastar sought to foreclose the mortgage assigned to it by Netwide against the Mills/Strassburgers. After a bench trial, the trial court found that Novastar was not entitled to enforce the note because Novastar was not a holder of the note at the time it filed suit or any time thereafter and, as such was entitled. See Am. Bank of the S. v. Rothenberg, 598 So.2d 289, 291 (Fla. 5th DCA 1992) (finding that it is elementary that to be a holder, one must be in possession of the instrument; but noting that an exception to this requirement exists where the owner can prove ownership, the facts which prevent production of the instrument and its terms).
Novastar's rejection of the note caused Netwide to resell the loan to BNC, which subsequently endorsed the note and assigned the mortgage to Aurora. After the loan was resold, Netwide failed to repay Novastar the proceeds. Novastar's failure to take any action to enforce its rights on the note, whether at the time the closing package was received without the note, at Netwide's refusal to forward the note, at the time it learned that the loan had been resold, or at any time thereafter, made the machinations of Netwide possible. It is unreasonable for an insured to expect that a title insurance policy would insure against a wrongful act such as Netwide failing to repay Novastar when it resold the loan. See Gerrold, 637 A.2d at 1296.
All of the acts that prevented Novastar from enforcing its mortgage lien occurred subsequent to the issuance of the title insurance policy and arose as a direct result of Novastar's actions or inactions. As such, Novastar's loss was either not covered by, or was excluded by the policy *800 provisions.[3] Therefore, we reverse the trial court's judgment finding coverage under the title insurance policy and awarding Novastar damages, and remand this matter with instructions to the trial court to enter judgment in favor of appellant.
Inasmuch as this matter is being remanded for entry of judgment in favor of appellant, the award of attorney's fees to Novastar as prevailing party must also be reversed. Appellant's remaining issues are rendered moot and we decline to address them.
REVERSED AND REMANDED.
FARMER, C.J., and POLEN, J., concur.
NOTES
[1] The trial court entered two final judgments in this case. The first did not involve appellant and was not appealed. The second, appealed here, awarded a declaratory judgment against appellant.
[2] Netwide was a mortgage lender that originated mortgage loans and later sold them on the secondary mortgage market.
[3] This court must additionally note that because the closing package which allegedly did not contain the original note was forwarded to Novastar after closing took place, on the date the title insurance policy was issued, there was no evidence that the note was being wrongfully detained.