996 So.2d 942 (2008)
Kerri Louise BONICH, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; Cindy Sosa; Steven A. Sosa; Beverly Russell; and Patrick J. McCluney, as personal representative of the Estate of Stephen McCluney, deceased, Appellees.
No. 2D07-4381.
District Court of Appeal of Florida, Second District.
December 12, 2008.
*943 Melville G. Brinson, III, of Adams, Feichthaler & Brinson, St. James City, for Appellant.
Charles W. Hall and Mark D. Tinker of Banker Lopez Gassler P.A., St. Petersburg, for Appellee State Farm Mutual Automobile Insurance Company.
No appearance for remaining Appellees.
VILLANTI, Judge.
On November 2, 2003, Kerri Louise Bonich was injured while riding as a passenger in her own car as it was being driven by her boyfriend, Steven Sosa. She sought coverage for her injuries under the liability portion of an automobile policy issued by State Farm Mutual Automobile Insurance Company to Steven's mother, Cindy Sosa. The trial court entered a declaratory judgment in favor of State Farm, finding that Steven was not an "insured" as defined by his mother's policy. We affirm.
Bonich does not dispute that, absent legislative fiat, insurance coverage is a creature solely of the contract at issue. When addressing a coverage question, this court is guided by the principle that "`insurance contracts must be construed in accordance with the plain language of the policy.'" First Specialty Ins. Co. v. Caliber One Indem. Co., 988 So.2d 708, 712 (Fla. 2d DCA 2008) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003)). "`[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" First Specialty, 988 So.2d at 712 (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005)).
Here, the section of the State Farm auto policy at issue provides liability coverage for an "insured" who is driving a non-owned vehicle. The policy defines the term "insured" for purposes of this coverage as:
1. the first person named in the declarations;
2. his or her spouse;
3. their relatives; and
4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons.
(Emphasis added.) The policy further defines the term "relative" for purposes of this coverage as "a person related to you or your spouse by blood, marriage or adoption *944 (including a ward or foster child) who resides primarily with you. It includes your unmarried and unemancipated child away at school." (Emphasis added.) The term "you" in this definition means the named insured on the policy.
The parties did not dispute that Steven is related to his mother, Cindy, by blood. Instead, the parties' dispute focused on the extent, if any, to which Steven was residing with Cindy at the time of the accident. The trial court held an evidentiary hearing on this issue. At that hearing, the evidence established that Steven had lived with his mother while he was growing up. However, at some point early in 2002, when Steven was eighteen or nineteen years old, Cindy kicked him out of the house. Cindy testified that Steven was not working, he was involved with drugs, and she was concerned about the influence he was having on his younger siblings. Steven testified that after his mother kicked him out of her house, he stayed with different friends at different times. Essentially, he would stay with one friend until that friend tired of him, and then he would move on to stay with another friend, carrying his scant personal belongings with him. On two occasions when Steven tried to return to his mother's house, she called the police and had him taken away. While Steven admitted that he still had a key to his mother's house, had never changed his address with the Department of Motor Vehicles, and had never arranged to have his mail forwarded, he also testified that he had no belongings at his mother's house and had not lived there since she kicked him out approximately one year before the accident. Based on this evidence, the trial court found that Steven was not an "insured" under the State Farm policy for purposes of liability coverage, and it entered final judgment in favor of State Farm. Bonich now appeals.
As an initial matter, we note that this case presents a mixed standard of review. While the question being litigated was the legal question of coverage, that question turned on the resolution of disputed issues of fact concerning Steven's residence. The trial court held an evidentiary hearing to resolve those disputed issues of fact, and it then reached a legal conclusion on coverage based on its findings of fact. We review the trial court's findings of fact in a declaratory judgment action to determine whether they are supported by competent, substantial evidence. See, e.g., St. Vincent's Med. Ctr., Inc. v. Mem'l Healthcare Group, Inc., 928 So.2d 430, 434 (Fla. 1st DCA 2006), aff'd, 967 So.2d 794 (Fla.2007); Lawyers Title Ins. Co. v. Novastar Mortgage, Inc., 862 So.2d 793, 797 (Fla. 4th DCA 2003). However, the question of whether those facts fall within the scope of coverage is a question of law to be reviewed de novo. Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005).
In this case, the State Farm policy at issue provided liability coverage only for relatives who resided primarily with Cindy, the named insured. The trial court found that Steven was not residing primarily with Cindy in November 2003 when the accident occurred. This finding is supported by competent, substantial evidence presented at the hearing. Based on this finding of fact and the plain and unambiguous language of the State Farm policy at issue, the trial court concluded that there was no liability coverage afforded to Steven while he was driving a non-owned vehicle. Based on our de novo review of the policy language, we agree.
In both the trial court and in this appeal, Bonich relies heavily on case law addressing policies that provide liability coverage for those relatives who are "residents of the insured's household." See, e.g., Seitlin *945 & Co. v. Phoenix Ins. Co., 650 So.2d 624, 625 (Fla. 3d DCA 1994); Sutherland v. Glens Falls Ins. Co., 493 So.2d 87, 87 (Fla. 4th DCA 1986); Gen. Guar. Ins. Co. v. Broxsie, 239 So.2d 595, 596-97 (Fla. 1st DCA 1970). However, none of those cases are relevant to the issue before this court because State Farm's policy does not contain that language. Because of this difference in policy language, the case law that analyzes who may be a "resident of the insured's household" is neither controlling nor persuasive authority, and therefore it cannot compel reversal of the final judgment.
Further, even if the cases concerning residency in the insured's household were relevant, the evidence presented at the bench trial does not establish that Steven was a resident of Cindy's household. In the "household" cases, the courts focused on all of the circumstances surrounding the person's living arrangements, including whether a child was still supported by his or her parents, whether the alleged resident maintained a room and personal belongings at the residence, and whether the alleged resident had a key to the residence and was free to come and go from the residence at will. See, e.g., Seitlin & Co., 650 So.2d at 626 (finding an adult child to be a resident of his parents' household when the child was still fully supported by his parents, maintained a room and personal belongings at his parent's residence, and was free to come and go from there as he pleased); Sutherland, 493 So.2d at 87 (finding an adult child to be a resident of his mother's household when he was still fully supported by his mother, still had his clothing at his mother's residence, still ate all his meals at his mother's house, and was not paying his own rent).
Unlike in those cases, the evidence in this case established that Steven was no longer being supported by his mother, he did not maintain a room or belongings in her house, and he was not free to come and go from her house. Instead, Cindy had thrown Steven out of the house, had given his room to another of her sons, and had called the police when Steven tried to return. Thus, even under the "household" cases, the trial court's finding of no coverage was correct.
Bonich also argues that even if Steven was no longer living with Cindy, he should nevertheless be considered a resident of her household until he establishes a new permanent residence. Based on this premise, Bonich contends that State Farm had to provide coverage for Steven as a "resident relative" until Steven had established a new residence somewhere else and that State Farm had the burden to prove the existence of that new residence. However, nothing in either the State Farm policy or the case law supports placing this burden on State Farm.
The State Farm policy provides coverage only to relatives who are residing primarily with the named insured at the time of the accident in question. Thus, the policy language contemplates that a relative of the named insured may have one residence, more than one residence, or even live like a "rolling stone," but coverage turns on the quantity of time that the relative actually resides with the named insured. Plainly put, the policy does not provide coverage for relatives who might have lived primarily with the named insured at some point in the past but who have since moved on.
Here, Steven had not lived with Cindy at all for more than a year before the accident occurred. Regardless of whether Steven had one residence, two residences, or none at all, the evidence established that he was not residing primarily with Cindy at the time of the accident. Therefore, under the plain language of Cindy's *946 State Farm policy, there was no liability coverage available to Steven while he was driving a non-owned vehicle. Accordingly, the trial court properly entered declaratory judgment in favor of State Farm.
Affirmed.
CASANUEVA and WALLACE, JJ., Concur.