125 N.J. Super. 23 (1973)
308 A.2d 357
MAURICE WEIR, PLAINTIFF-RESPONDENT,
v.
CITY TITLE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1973.
Decided July 17, 1973.
*25 Before Judges LORA, ALLCORN and HANDLER.
Mr. Arthur J. Sills argued the cause for the appellant (Sills, Beck, Cummis, Radin & Tischman, attorneys).
Mr. John C. Givens argued the cause for the respondent (Parsons, Canzona, Blair & Warren, attorneys).
PER CURIAM.
Defendant appeals a judgment in favor of plaintiff in the sum of $7,500, the loss allegedly sustained by plaintiff as a result of a defect in the title of premises insured under a policy of title insurance issued by defendant to the plaintiff.
From the evidence adduced at the trial, it appears that the premises were purchased by plaintiff for $24,000 in 1968, by deed dated August 5, 1968 and recorded August 12, 1968. Plaintiff was represented by his own attorney who, prior to the closing, sought and obtained from defendant a back-title letter bearing date "7/23/68," by which he was authorized to commence his search of the title beginning April 18, 1962. The letter, addressed to the attorney, stated in pertinent part:
In reply to your request for a back title letter and provided the above numbered policy covers the property in which you are now interested and you make application to us for interim binder prior to the closing of the transaction or, upon closing, a title policy, you may start your search, solely for the purpose of such binder or policy, as hereinafter set out. * * *
Despite the fact that the title closing must have taken place between August 5 and August 12, 1968, for reasons not apparent or disclosed by the record plaintiff's attorney did not report and certify the results of his title examination to defendant until January of the succeeding year. By *26 final certificate dated January 6, 1969 the attorney reported the results of his title examination as showing the fee title to the entire premises in plaintiff, free of any defects other than certain minor exceptions not here pertinent, and made application to defendant for an owner's policy and a mortgage policy. The certificate was signed by plaintiff's attorney and certified the title "down to January 6th, 1969 at 10 o'clock. A.M." Among other things, the certification contained the following representation:
So far as known to undersigned there is no dispute among attorneys or Title Companies as to validity of this title. * * *
The executed final certificate was transmitted by plaintiff's attorney to defendant, with a covering letter also dated January 6, 1969. The letter and certificate were received by defendant on January 9, 1969, and thereafter defendant issued its owner's policy to plaintiff, the policy bearing the issue date of January 13, 1969 and an effective date of August 12, 1968.
There seems to be little question but that, although the deed into plaintiff purported to convey to him a tract of land described as containing approximately 147 feet adjacent to the Manasquan River, title to 47 feet (plus or minus) of said frontage was not in plaintiff's grantors. Instead, it was owned by one Huddy, an adjoining owner. The error seemingly originated with a survey made in connection with a mortgage loan to one of plaintiff's predecessors in title in 1957. The surveyor in question has since died.
In any event, following the closing of title in August 1968 plaintiff ordered a topographical survey of the premises. That survey, when made, set forth the boundaries of the premises as described in plaintiff's deed, as well as the common boundary line as claimed by Huddy, said line being designated thereon as "Survey line by Donald Smith," the latter being the surveyor who prepared a survey of Huddy's premises. Although the topographical survey prepared for *27 plaintiff bears the date of December 6, 1968, the record is silent as to the date on which it was received by plaintiff or his attorney.
During the same period Huddy had filed with the local planning board an application for the subdivision of his premises, which was accompanied by a plat or map of the subdivision prepared by Donald Smith. Public notice of the filing of said application and plat for the subdivision of said premises, of a public hearing to be held thereon by the planning board on December 11, 1968, and of the availability for examination of the application and plat was published by Huddy in a local newspaper on November 29, 1968. Whether plaintiff was sent a copy of such notice by mail, as required by N.J.S.A. 40:55-1.7, does not appear from the record. Plaintiff testified he did not learn of the meeting until the first week in January.
At all events, the planning board hearing scheduled for December 11, 1968 was adjourned or carried to January 8, 1969. Both plaintiff and his attorney attended said meeting. The certified minutes of the meeting of January 8, 1969 set forth what transpired:
Case #172  Dr. James A. Huddy, Jr.  Major Subdivision, Preliminary, Block 1385  Lot 11, Block 1422  Lot 15
Dr. Huddy was in attendance at this meeting, and was also represented by [his attorney]. Mr. * * *, Attorney * * * representing Morris Weir, called the Board's attention to the fact that his client claims that Dr. Huddy is encroaching on his property. He submitted a copy of a survey * * * showing the purported encroachment. * * * [He] also submitted a tracing of Dr. Huddy's subdivision boundaries superimposed upon his survey to show this overlap. * * * [Dr. Huddy's attorney] stated they have run their own surveys, and have deeds to back up their survey. He also said he has had a Title Binder prepared, as well as Title Insurance Policies. He also offered a photostatic copy of the deed with a metes and bounds description of Mr. Risden's [plaintiff's] property (Mr. Risden was predecessor in title to Mr. Weir). * * *
After additional discussion of the problem, [the attorney for Mr. Weir] said he and his client have no objection to a Preliminary Approval being granted this application. The attornies will get together *28 with the Engineers and the principals in this matter and determine actual boundary lines prior to the filing for a final approval. * * *
Despite the fact that, only two days earlier, he had certified the title as valid and applied for the issuance of a title policy on the basis of such certification, and notwithstanding that he was aware that he had not yet received the title policy, plaintiff's attorney apparently made no effort to immediately inform defendant of the serious title question which had arisen. Instead, he waited approximately one month before advising defendant, during which period the title policy was issued and delivered by defendant. The first notification to defendant was made by letter from plaintiff's attorney, dated February 7, 1969, as follows:
A question has arisen relating to the southerly boundary line of the above-described property as to the distance along the Manasquan River which results in a difference of approximately 42 feet.
The premises to the South have recently been sold, and although I understand the title is not yet closed, the new purchaser had the premises surveyed by Donald W. Smith of Jackson, New Jersey, and he established the distance along the Manasquan River for our p.q. at approximately 100 feet in accordance with the original deed for lot 27 out of Fairbanks which calls for 100 feet more or less along the river. As a result, there appears to be a boundary dispute between the two properties. The difficulty seems to stem not only from the vagueness of the old descriptions in the chain of title, but further that the course of the line in question runs along the course of a gully, which course is also subject to differences of opinion.
I will keep you advised of the developments in this matter and if you have any questions concerning same, please advise.
The present action was commenced subsequently by plaintiff, seeking damages because his "title * * * was defective." The separate defenses set forth in the answer filed by defendant asserted, among others, knowledge by plaintiff of the defect at the time of the issuance of the title policy. Another separate defense alleged absence of any damage, plaintiff on October 17, 1969 having sold and conveyed the property to third persons, for the sum of $30,000, without *29 any diminution in price should the river frontage consist of 100 feet, rather than 147 feet. By counterclaim subsequently filed, defendant also sought cancellation of the policy.
Title insurance is no different from any other type of non-marine insurance and, as such, is governed by the same general rules and principles applicable to issuance, validity and interpretation of policies of insurance generally. Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1962). It is well settled that, where an application for insurance has been submitted to an insurer and, before the policy is issued, a change of conditions material to the risk occurs or is discovered by the applicant, he is under an obligation to inform the insurer promptly. The knowing suppression or failure to make timely disclosure of such information constitutes a material misrepresentation. The rule and the reasons underlying it were set forth by the United States Supreme Court in the case of Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928):
Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. * * *
Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. * * *
But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, ... or if a policy has been issued, it has a valid defense to a suit upon it. * * * [At 316-317, 48 S.Ct. at 413-418; citations omitted]
*30 Couch states [9 Couch on Insurance 2d (1962), § 38,21 at 346-347]:
Known changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be divulged. That is, there is a continuing duty on the part of an applicant to disclose newly discovered matters arising between the application for, and the confirmation of, the contract where they come to the applicant's knowledge and render his former answers no longer true.
See generally, Johnstone, "Title Insurance," 66 Yale L.J. 492, 496 (1957); 43 Am. Jur.2d, Insurance, § 733; Disposable Services, Inc. v. ITT Life Ins. Co. of New York, 453 F.2d 218 (5 Cir.1971), cert. den. 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972); Metropolitan Life Ins. Co. v. Macaulay, 142 N.J. Eq. 296 (Ch. 1948). Compare, Rosenblatt v. Louisville Title Co., 218 Ky. 714, 292 S.W. 333 (Ct. App. 1927); Stewart Title Guaranty Co. v. Lunt Land Corp., 162 Tex. 435, 347 S.W.2d 584 (Sup. Ct. 1961).
Whatever may have been the knowledge or lack of knowledge by plaintiff and his attorney at and prior to the preparation and submission of the title certification and application on January 6, 1969, it is uncontroverted that both of them were fully aware of the existence and nature of the questionable title of plaintiff to the 47-foot piece no later than January 8, 1969. This knowledge followed by only two days the completion of the certification of title by the attorney, and while he was awaiting the processing of the application and issuance of the title policies by defendant.
In such circumstances, it was the obligation of plaintiff and his attorney to forthwith bring the matter to the attention of and make full disclosure to defendant. The defect was manifestly material to the risk that plaintiff sought to have defendant undertake, and fair dealing demanded no less. Instead, plaintiff and his attorney procrastinated for one month  whether to avoid arousing suspicion on the *31 part of defendant of prior awareness of the defect by plaintiff and his attorney, or for some other reason, is not clear from the record. What is plain is that the delay in notification resulted in the issuance and delivery of the policy by defendant, without the slightest suspicion that the risk being assumed by it had been materially increased.
We are satisfied that, in the light of the undisputed facts, defendant was entitled to a judgment in its favor as a matter of law. Although plaintiff's attorney was undoubtedly on defendant's list of approved attorneys, this did not make him any the less the agent of his client, the plaintiff, nor did it make plaintiff any the less chargeable with the knowledge of the attorney or with the attorney's failure promptly to notify defendant of the change in circumstances. Dickerson v. Bowers, 42 N.J. Eq. 295 (Ch. 1886); Annotations, "Imputation of Attorney's Knowledge of Facts to His Client," 4 A.L.R. 1592 (1919), 38 A.L.R. 820 (1925). Compare, Colegrove v. Behrle, 63 N.J. Super. 356 (App. Div. 1960); Farr v. Newman, 14 N.Y.2d 183, 250 N.Y.S. 2d 272, 199 N.E.2d 369 (Ct. App. 1964).
Accordingly, the judgment of the Law Division is reversed and the cause is remanded with directions to enter judgment in favor of defendant.