ESTATE OF ELIZABETH COLQUHOUN, PLAINTIFF-APPEL-
LANT, v. ESTATE OF ROBERT G. COLQUHOUN,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 26, 1981—Decided February 24, 1981.

492

Before Judges ALLCORN, PRESSLER and FURMAN.

*Stanley W. Kallmann* argued the cause for appellant (*Gennet & Kallmann,* attorneys).

*Michael J. Larkin* argued the cause for respondent.

The opinion of the court was delivered by

PRESSLER, J. A. D.

This appeal raises questions which have not been recently addressed by our courts regarding the nature of the obligations owed by cotenants to each other.

Robert G. Colquhoun and his wife Elizabeth Colquhoun purchased a home in Basking Ridge, New Jersey, in August 1973 as tenants by the entirety. They were assisted in the purchase by their son Robert F. Colquhoun, who lent them $51,000 secured by a mortgage on the property, which both his parents executed and which was duly recorded. The mutual understanding was that $35,000 of this sum was to be in the nature of a bridge loan to be repaid by the parents when they sold their former home. Accordingly, the mortgage instrument stipulated that $35,000 be paid by August 31, 1974 and that the remaining $16,000, together with 6% interest, be paid in equal monthly installments over a 24-year period commencing in October 1974. The $35,000 was timely repaid but it appears that there were no payments ever made on account of the $16,000 balance.

Although there was evidently some marital discord between the elder Colquhouns, they continued to reside together until October 17, 1978, when Robert G. Colquhoun died testate. Elizabeth, his widow, died testate on May 29, 1979. Robert, the father, by his will expressly disinherited his wife, his son Robert and a younger son Owen, leaving his estate to sisters and brothers in Scotland. He did, however, name his son Robert his executor. Elizabeth, by her will, expressly disinherited her husband and her son Robert, leaving the bulk of her estate to her son Owen whom she also named as executor.

In June 1978 Robert, the son, had assigned to his father, individually, the mortgage on the Basking Ridge property. It is stipulated that the assignment was without consideration. The intent of the son to have benefitted the father alone is made clear by the underlining of the word "individually" in the instrument of assignment and by the fact that Robert, the son, is an attorney at law of this State who may be presumed to have been fully aware of the import of the verbiage employed. Robert, the father, who died only a few months after the assignment, did not record the instrument during his lifetime, it having been represented to us in writing by the attorney for his estate that he chose not to do so. Insofar as the record before us indicates, the assignment was not recorded after the father's death and there is, further, nothing in the record to suggest that his wife Elizabeth, during her lifetime, had any knowledge at all of the assignment. Indeed, the contrary appears to be true.

Elizabeth Colquhoun, having by reason of her husband's death succeeded to the sole ownership of the property, was evidently concerned about not having an appropriate written memorialization of the repayment to her son Robert of the $35,000 bridge loan. Accordingly, in November 1978 her attorney wrote to Robert, as mortgagee, communicating his mother's request for "some type of written evidence of the payment." On March 3, 1979 Robert executed a partial discharge of the original mortgage by a document declaring satisfaction thereof to the extent of $35,000. That document made no reference to the earlier assignment of the mortgage by Robert to his father. It was, moreover, executed by Robert individually and not as executor of his father's estate, which by then was the owner of the mortgage.

Elizabeth died some three months after delivery by Robert of the partial discharge. Insofar as we are able to reconstruct from the record, it appears that shortly after her death the attorney for Robert's estate advised the attorney for her estate that it was Robert's estate rather than the son Robert who was the holder of the mortgage and entitled to receive payment

thereof. That is the clear import of an exchange of correspondence between these attorneys in July 1979, the last communication being a letter from the attorney for Robert's estate referring to the principal and interest due on "the mortgage held by Mr. Colquhoun at the time of his death" and enclosing "a photocopy of the assignment of mortgage which I referred to in my earlier letter."

Based on this information, Elizabeth's estate sued Robert's estate seeking a determination of its liability, if any, on the mortgage. Its concern extended not only to any balance due but also to the validity of the partial discharge executed by Robert, the son, after he had already assigned the mortgage to his father.

As the matter became focused during the course of the litigation, the primary issue in dispute, as perceived by plaintiff's counsel, was whether Elizabeth's estate was entitled to a set-off against Robert's estate in the amount of half of the mortgage balance. Plaintiff's theory was that during their lives Elizabeth and Robert had been co-obligors in respect of the underlying debt and, therefore, that Robert's personal estate should continue liable for one-half thereof. The impact of the fact of the assignment of the mortgage by Robert the son to Robert the father appears not to have been fully appreciated either by the parties or the trial judge. In any event, each of the parties moved for summary judgment, Elizabeth's estate claiming that it was liable for only half the outstanding mortgage debt and Robert's estate claiming the right to recover the entire mortgage debt. The trial judge granted the motion of Robert's estate, reasoning that Elizabeth's acquisition of the exclusive benefit of the title by reason of Robert's death carried with it the full burden of the encumbrance thereon.

If we were dealing here with a mortgage on an estate by the entireties held by anyone other than one of the cotenants, we would be inclined to agree with the trial judge's rationale. We are aware that there is a split of authority in this country on

the issue of whether the surviving spouse in these circumstances is entitled to exoneration or reimbursement out of the estate of the predeceasing, joint-obligor spouse. The so-called majority view apparently recognizes a right of contribution on the joint-obligation theory. The minority view, on the other hand, denies such a right on the theory that since the estate of the predeceasing spouse no longer has any interest in the title, it should not be burdened by an obligation having no concomitant benefit, particularly where the value of the property exceeds the amount of the debt. See cases collected in *Annotation, "Surviving Spouse—Lien Reimbursement,"* 76 *A.L.R.2d* 1004 (1961). New Jersey has long since adopted the rationale of the minority view in denying the surviving spouse a right of exoneration from the estate of the predeceasing spouse. *See In re Staiger,* 104 *N.J.Eq.* 149 (E. & A.1928). *And cf. Nobile v. Bartletta,* 109 *N.J.Eq.* 119 (E. & A.1931), holding that in respect of a tenancy by the entirety, the wife is entitled to receive from her predeceasing husband's estate a *pro rata* contribution for those mortgage payments made by her which were due and owing up to the time of his death. We are, therefore, bound to the minority view as a matter of *stare decisis,* and we are, in any event, persuaded that it produces the more equitable result.

We are nevertheless satisfied that this exoneration-reimbursement issue is fundamentally inapplicable here since we are not dealing with a mortgage on jointly owned property held by a third party but rather, because of the assignment of the mortgage by the son to the father, with a mortgage held by one cotenant against the other cotenant. In our view, therefore, the reimbursement issue need never be reached because well-settled and long established principles of equity compel the extinguishment of the mortgage in these circumstances.

As recently observed by our Supreme Court, "Co-owners of property, as such, have a 'confidential relationship' with respect to certain aspects of their common interests." *Grober v. Kohn,* 47 *N.J.* 135, 149 (1966). Whatever else these "certain

aspects" may substantively encompass, it is at least clear that one of those aspects is the duty to protect the common title. That duty, in turn, prohibits a cotenant from acquiring an undisclosed adverse interest in the common property for his own benefit, and if he has acquired such an interest, he will be deemed to have done so for the benefit of all cotenants, subject only to their obligation to make a *pro rata* contribution to the acquisition cost, if any.

This principle was first explicated early in the development of our equity jurisprudence when Chancellor Green held that

> Where two or more persons having an interest in lands claim under an imperfect title, and one of them buys in the outstanding title, such purchase will enure to the common benefit, upon contribution made to repay the purchase money. "Where," says Chancellor Kent, "two devisees are in possession under an imperfect title, derived from their common ancestor, it is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself." [*Weller v. Rolason*, 17 *N.J.Eq.* 13, 19 (Ch. 1864).]

The further articulated and now classic statement of the principle is that of Vice-Chancellor Berry, who observed that

> The general rule in this country is that "a tenant in common in possession and enjoyment of a common property occupies a confidential relation to his co-tenants, and because of this relation there is an implied obligation on his part to sustain and protect the common title. Therefore, if a co-tenant in possession of common property purchases that property, either directly or indirectly, at a sale under foreclosure or a mortgage or deed of trust, the purchase will be deemed to have been made for the benefit of all of the co-tenants; provided, however, the other co-tenants elect within a reasonable time so to consider the purchase and offer to contribute their respective proportions of the purchase price. 7 *R.C.L.* 857 § 51 *et seq.*; 19 *L.R.A.* (N.S.) 591 note; 7 *Am.L.Rep.* 297, and cases cited; 38 *Cyc.* 40; 1 *Washb. Real Prop.* 430 ch. 13 § 14. [*Breitman v. Jaehnal*, 99 *N.J.Eq.* 243, 245–246 (Ch.1926), aff'd *o. b.* 100 *N.J.Eq.* 559 (1926)].

The principle has been applied to the acquisition by a cotenant of a tax lien, *Roll v. Everett*, 73 *N.J.Eq.* 697, 701 (E. & A. 1907); to his acquisition of a tax title, *Egan v. Egan*, 98 *N.J.Eq.* 487, 490 (Ch.1925); to his acquisition of title at a mortgage foreclosure sale, *Breitman v. Jaehnal, supra*, 99 *N.J.Eq.* at 245–246; to his acquisition of title at judicial sale, *Mosher v. Van Buskirk*, 104 *N.J.Eq.* 89, 90 (Ch.1929); to his acquisition of title at a

partition sale, *Leppert v. Leppert,* 141 *N.J.Eq.* 205, 207 (Ch. 1948), and, as here, to his acquisition of an outstanding encumbrance, *Errico v. Scopollitti,* 131 *N.J.Eq.* 125, 128 (Ch.1942). Although these cases involved tenants in common, we have no doubt of the application of the principle to tenants by the entirety as well, their relationship to each other being essentially that of tenants in common with the right of survivorship. *See King v. Greene,* 30 *N.J.* 395 (1959).

Thus, we are persuaded that whatever the intention of Robert, the son, may have been in making a gift of the mortgage to his father alone, and apparently a gift kept secret from his mother, that intention could not have superseded, frustrated or in any way qualified the legal consequence of that transaction *vis-á-vis* the rights of the cotenant. Thus, once Robert, the father, became seized with the ownership of the mortgage on the jointly-owned property, the benefit thereof enured to his cotenant Elizabeth, and in this instance without any obligation on her part or any subsequent obligation on her estate's part to contribute to the acquisition cost because there was concededly no acquisition cost. Consequently, Robert, the father, having in effect taken the assignment as constructive trustee for Elizabeth as well as for his own benefit, the full equitable ownership of the mortgage devolved upon both cotenants. The mortgage consequently merged into their legal title to the property and was hence extinguished. *See, e. g., Portuguese v. Ziss,* 2 *N.J.Super.* 397 (Ch.Div.1949). *And cf. Thebaud v. Hollister,* 37 *N.J.Eq.* 402 (Ch.1883). This being so, there was no longer a mortgage *in esse* during the lives of the cotenants and clearly then, no basis for its revival thereafter. In our view, therefore, Elizabeth's estate has no obligation at all to Robert's estate and is entitled to a cancellation of the original mortgage.

The summary judgment appealed from is reversed. We remand to the trial court for entry of judgment consistent herewith.