271 N.J. Super. 50 (1994)
637 A.2d 1293
PETER GERROLD, PLAINTIFF-APPELLANT,
v.
PENN TITLE INSURANCE CO., DEFENDANT/THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
TROIKA AFFILIATES, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
March 11, 1994.
*51 Before Judges KING, HAVEY and ARNOLD M. STEIN.
Charles J. Lange, Jr., attorney for appellant (Mr. Lange on the brief).
Jack E. Milkis, P.C., attorney for respondent (Mr. Milkis on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
We affirm the order granting summary judgment in favor of defendant, Penn Title Insurance Company, because the mortgagee's failure to pay the promised funds to the mortgagor was not a covered risk under the title insurance policy.
On April 12, 1990, a title insurance binder was issued to third-party defendant, Troika Affiliates, Inc., "its successors and/or assigns as their interest may appear" by CCR Search and Abstract Agency, Inc., an agent for defendant Penn Title. The binder was for a loan policy to Troika in the amount of $11,600.
*52 On April 27, 1990, a loan closing took place at which Helene Ernst borrowed $11,600 from Troika and gave Troika a first mortgage on her property located at 119 East Church Street, Bergenfield. The mortgage was recorded on May 30, 1990. Neither Penn Title nor its agent were present at the closing.
On May 9, 1990, plaintiff gave Troika a check in the amount of $11,600 to purchase the Ernst mortgage. The check was drawn on the account of Financial Resources, a business name used by plaintiff. In return, Troika gave plaintiff an assignment of mortgage dated April 27, 1990, and recorded May 30, 1990, in book 964, page 282 of assignments.
Ernst received a $9,233 check from Troika dated May 10, 1990, representing the net loan proceeds. The check was returned due to insufficient funds. For some unexplained reason, Ernst continued to make timely payments for almost one year until her brother discovered that she had never received the loan proceeds and notified plaintiff about the bad check.
After being advised of the assignment of the Ernst mortgage to plaintiff, Penn Title's agent issued a loan title policy dated May 30, 1990, naming plaintiff, his successors and/or assigns as the insured. The title insurance premium was paid on May 10, 1990. The truth in lending disclosure statement reveals that the title charges were paid from the borrower's proceeds, with check numbers corresponding in sequence to the checking account of Troika. Plaintiff demanded coverage from Penn Title for the loss resulting from the bad check. Penn Title denied coverage.
Plaintiff claims that the judge erred in concluding that the failure of consideration was not a covered event under the title insurance policy. He also contends that his claim is not subject to the exclusion in the policy for matters created, suffered, assumed or agreed to by the insured. According to plaintiff, the law of assignments does not apply because the insurance contract was issued after the assignment of the mortgage.
*53 A title insurance policy is a contract of indemnity under which an insurer for valuable consideration agrees to indemnify the insured in a specific amount against loss through defects of title to, or liens or encumbrances upon, realty in which the insured has an interest. Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 478-79, 178 A.2d 1 (1962). Title insurance is governed by the same general rules and principles generally applicable to the issuance, validity and interpretation of all policies of insurance. Weir v. City Title Ins. Co., 125 N.J. Super. 23, 29, 308 A.2d 357 (App.Div. 1973).
The title insurance policy in this case provides that it will insure against a variety of losses incurred by reason of "[t]he invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest...." It has been held elsewhere that a title insurance contract insures only the title to the land securing the debt and not the debt itself. See Bank of Miami Beach v. Fidelity and Casualty Co., 239 So.2d 97, 98 (Fla. 1970). Failure of consideration is not a covered loss.
There are other reasons why coverage was properly denied. The title insurance commitment listed as the proposed insured Troika Affiliates, Incorporated, "its successors and/or assigns as their interest may appear." Schedule B set forth the requirements. The first requirement was to "[p]ay the agreed amounts for the interest in the land and/or the mortgage to be insured."
Troika's check to Ernst was returned for insufficient funds. The condition of payment set forth in the title commitment was not satisfied, resulting in a failure of consideration. A mortgage not supported by consideration is void in the hands of either the mortgagee or the assignee. Riley v. Hopkinson, 82 N.J. Eq. 469, 470, 88 A. 1077 (Ch. 1913). An assignee need not have notice of the failure of consideration. S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193, 204, 129 A.2d 758 (Ch.Div. 1957).
*54 An assignee of a mortgage succeeds to the rights and privileges, as well as to the disabilities of the assignor. Byram Holding Co. v. Bogren, 2 N.J. Super. 331, 336, 63 A.2d 822 (Ch.Div. 1949). Pursuant to N.J.S.A. 46:9-9:
All mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name, but, in any such action by the assignee, there shall be allowed all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor and existing before notice of such assignment.
Plaintiff asserts that the situation in this case is similar to that presented in Southern Title Ins. Co. v. Crow, 278 So.2d 294 (Fla. Dist. Ct. App. 1973). In that case the title insurer was held liable to the ultimate assignees of a mortgage which was declared invalid for failure of the original mortgagee to comply with the Truth in Lending Act. Id. at 294. The court found that the exclusion defense for defects "known to the insured claimant" was not valid against the assignees who took without notice of the defective title. Ibid. Crow can be distinguished. There, the title was rendered defective due to a violation of a statute, a truth in lending law. Violations of a truth in lending law is a specific exclusion in this title insurance policy. Moreover, this case involves a failure of consideration. Payment by the mortgagee was a specific contractual requirement set forth in the title commitment, a requirement not met by Troika.
We interpret an insurance policy "in light of the insured's objectively-reasonable expectations." SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 211, 607 A.2d 1266 (1992); see also, Clients' Security Fund v. Security Title and Guar. Co., 134 N.J. 358, 371, 634 A.2d 90 (1993) (in determining the policy holder's reasonable expectations, an objective standard of reasonableness should be applied). One of the reasonable expectations of a policyholder who purchases title insurance is that he is protected against defects in his title which appear of record. 9 Appleman, Insurance Law and Practice, § 5201 at 8-9 (rev. ed. 1981) (footnote omitted). Under the facts of this case, it would not *55 be reasonable for an insured to expect that a title insurance policy would insure against such a wrongful act as the mortgagee paying the borrower from a checking account with insufficient funds.
In the companion cases, Clients' Security Fund, supra, and Sears Mortgage Corp. v. Rose, 134 N.J. 326, 634 A.2d 74 (1993), the title insurance companies were held liable for the closing attorney's embezzlement of funds. In Sears Mortgage, the Supreme Court of New Jersey found that the absconding attorney had a long-standing business relationship with the title insurance company. Id. at 333, 634 A.2d 74. Liability was based on the agency relationship between the title insurance company and the attorney. The Court noted that the title insurance company was in the best position to prevent the loss created by the attorney's theft. Furthermore, it was aware of the risk. Id. at 345, 634 A.2d 74.
The Court found that where a loss is caused by the fraud of a third party, when determining the liability as between two innocent parties, the loss should fall on the one who enabled the fraud to be committed. Ibid. A title insurance company should not put "technical encumbrances or hidden pitfalls" in the way of unsuspecting insureds that may undermine their "reasonable expectations." Id. at 348, 634 A.2d 74. (quoting Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)). "[O]rdinarily the company should be bound by the impression as to coverage which the average purchaser would gain from such inspection of the policy as he would be likely to make." Id. at 348, 634 A.2d 74 (quoting Caldwell v. Aetna Casualty and Surety Co., 107 N.J. Super. 456, 461-62, 258 A.2d 900 (App.Div. 1969)).
Clients' Security Fund and Sears Mortgage can be distinguished from this case. In Sears Mortgage, an agency relationship was found between the title insurance company and the attorney. In both cases, the title companies issued a "closing-protection letter" stating that they agreed to "reimburse you for actual loss incurred by you in connection with such closing when conducted by our Approved Attorney ... and when such loss *56 arises out of ... [f]raud or dishonesty by our Approved Attorney in handling your funds or documents in connection with such closing." Sears Mortgage, 134 N.J. at 350, 634 A.2d 74; see also Clients' Security Fund, 134 N.J. at 370-71, 634 A.2d 90. No such agency of or promise by the title company exists here.
The motion judge concluded that plaintiff's claim arises as a result of the actions of his assignor, Troika, and, as assignee, plaintiff succeeded to the disabilities as well as the rights and privileges of his assignor. The judge correctly ruled that the failure of consideration for the Ernst mortgage was not a covered risk under the title insurance policy. Penn Title's only obligation was to indemnify plaintiff against any loss through a defect in the title. The judge observed that fidelity insurance might have provided plaintiff the kind of protection that he sought, a type of insurance not available from Penn Title. Under N.J.S.A. 17:46B-12, a title insurance company is prohibited from issuing any kind of insurance other than title insurance.
Finally, plaintiff's claim for counsel fees pursuant to R. 4:42-9(a)(6) was properly disallowed. He was not a successful claimant.
Affirmed.