NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0305-13T1

VALLEY NATIONAL BANK, Successor
by Merger to Bergen Commercial
Bank,

       Plaintiff-Respondent,

   v.

J. RONALD MEIER,

       Defendant-Appellant,

   and

GREGORIA MEIER,

       Defendant.

---

| APPROVED FOR PUBLICATION |
| --- |
| September 26, 2014 |
| APPELLATE DIVISION |

_____

Argued September 16, 2014 — Decided September 26, 2014

Before Judges Fisher, Nugent and Manahan.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-063285-09.

Bruce H. Dexter argued the cause for appellant (Dexter & Kilcoyne, attorneys; Mr. Dexter and Virginia Kilcoyne, on the brief).

David Neeren argued the cause for respondent (Udren Law Offices, P.C., attorneys; Mr. Neeren, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider the ramifications for a later foreclosure action when, six years earlier, defendant J. Ronald Meier, owner with his wife of the foreclosed property, paid off the first mortgage loan and, rather than obtain a discharge of the mortgage, received an assignment. We agree with the Chancery judge that, in these circumstances, the mortgage had no further validity.

The critical facts are undisputed. In 1999, defendant and his wife purchased the Ventnor property in question with the proceeds of a $168,000 loan from Community Bank of Bergen County the repayment of which was secured by a purchase money mortgage. Defendant was the president, chief executive officer and chairman of the board of Community Bank, which later merged with plaintiff Valley National Bank.

In 2005, defendant and his wife obtained a $100,000 home equity loan from Community Bank that was also secured by a mortgage on the Ventnor property. In 2007, defendant paid the entire amount due on the 1999 loan, and, in exchange, Community Bank provided defendant with a written assignment, which he recorded, of the 1999 mortgage.[1] Defendant claimed in the trial

_____

[1]In opposing the motion that gave rise to the order under review, defendant, who was then unrepresented, failed to provide the court with any opposing papers; the facts he presented at oral
(continued)

court — no affidavit or certification to this effect was provided — that he paid off this debt with "premarital assets."[2]

In 2009, plaintiff Valley National Bank filed a complaint against defendant and his wife, as well as the holder of a later $15,000 mortgage, seeking foreclosure of the 2005 home equity loan. The complaint made no mention of the 1999 mortgage defendant paid off in 2007. A final judgment by default was entered in plaintiff's favor on August 22, 2012, and plaintiff purchased the property at a sheriff's sale on January 3, 2013.

On April 1, 2013, approximately three months after the sheriff's sale, defendant demanded payment from plaintiff of $149,838.06 — the amount paid by defendant to Community Bank in 2007 — plus $53,019.20, which was asserted to be accrued interest, presumably since defendant paid the principal amount to Community Bank in 2007. After investigating, plaintiff

---

(continued)
argument regarding his reasons for paying off the 1999 mortgage loan, therefore, were not properly supported. Notwithstanding, like the Chancery judge, we assume for present purposes that defendant's assertions are true. For example, defendant claimed he paid off the mortgage because federal banking regulations precluded him from having his bank hold more than one mortgage on his property. There is no sworn statement or evidential material to support that this was his intention.

[2]We are told defendant and his wife were divorced. The record does not disclose when this occurred nor does the record suggest how the parties' property, including the Ventnor property in question, was distributed.

A-0305-13T1

demanded that defendant agree to a discharge of the mortgage. When defendant refused, plaintiff moved for a divestiture of the assignment of mortgage.

As we have observed, defendant filed no written response to plaintiff's motion. On the return date, the Chancery judge permitted the unrepresented defendant to argue his position and then adjourned the matter to allow additional time for the retention of counsel and a response from defendant in accordance with court rules. Defendant appeared on the adjourned return date without counsel, and the judge ruled in plaintiff's favor.

In his oral decision, the experienced Chancery judge concluded that defendant's receipt of an assignment of the mortgage in 2007 — when he was a director of the bank — was "troubling," and that the circumstances "might well support a referral of this matter to the Department of Banking and Insurance." He concluded that the record demonstrated the mortgage had been fully satisfied in 2007, was no longer legally viable, and the assignment was consequently unenforceable. By order dated August 2, 2013, the judge divested defendant of the mortgage and assignment and declared defendant had no further interest in or claim to the property.

In appealing, defendant argues, first, that the assignment was valid and the mortgage still viable and, second, that

because plaintiff did not question or contest the 1999 mortgage's viability prior to entry of final judgment, the order under review should be barred by the entire controversy doctrine, or the doctrines of waiver, estoppel and laches. The second argument, which was not posed in the trial court, is so devoid of merit as to be unworthy of further discussion in a written opinion. R. 2:11-3(e)(1)(E). It suffices to say that the parameters of Rule 4:50 are broad enough to permit plaintiff relief in this extraordinary circumstance, and that the equitable doctrines upon which defendant relies were designed to prevent, not perpetuate, fraud and inequity.[3]

As to defendant's first point, we agree with the Chancery judge that it would be inequitable to conclude that defendant is entitled to payment from plaintiff pursuant to the assigned mortgage. Defendant's argument to the contrary is based on a misreading of well-established principles of law.

Our analysis must start with the indisputable premise that, in the eyes of the law, a mortgage is extinguished by operation of law when full payment is made by a mortgagee and accepted by

[3]Defendant never responded to the complaint or otherwise put plaintiff on notice of his claim to rights emanating from the assigned mortgage until after entry of the foreclosure judgment and after the property was transferred through a sheriff's sale. That circumstance speaks for itself as a response to defendant's claim that equitable principles preclude the relief plaintiff seeks.

the mortgagor. See, e.g., 12 Thompson on Real Property §

101.03(c) at 414 (Thomas ed., 2d ed. 2008). There is no dispute

that Community Bank was the holder of the mortgage when, in

2007, defendant tendered all that was due on the debt.

Normally, in such an instance, the borrower would be entitled to

a discharge of the mortgage, and have that event recorded so the

mortgage would no longer encumber the property. Here, defendant

fully paid off the debt with what he claims were his own

premarital assets, and Community Bank — of which defendant was

then president, chairman of the board, and chief executive

officer — took the unusual step of providing defendant with an

assignment of the mortgage, which defendant recorded.[4]

In arguing that the mortgage remained viable because of the

assignment, defendant chiefly relies upon the proposition

expressed by our Supreme Court that "[a]n assignment of a

---

[4]We again observe that the source of the funds used to pay off the 1999 loan and defendant's intention in obtaining an assignment instead of the mortgage's discharge are not supported by any sworn statement. The Chancery judge gave defendant ample opportunity to support his arguments in the manner proscribed by the rules, but defendant failed to do so. Although it would have been appropriate for the judge to have considered the motion unopposed, we find no error in the judge's generosity in assuming the truth of defendant's allegations, and we will do likewise because what defendant argues presents no obstacle to our affirmance of the judge's order. But to be clear — since defendant's ex-wife has not appeared in the proceedings in this court or the trial court — the claim that premarital funds were used was never established.

mortgage to one of two tenants in common . . . does not discharge it." Estate of Colquhoun v. Estate of Colquhoun, 88 N.J. 558, 565 (1982) (internal citation omitted). He also correctly argues that although they held the property by way of a joint tenancy, defendant and his wife were — as to each other — tenants in common. Newman v. Chase, 70 N.J. 254, 259 (1976). These principles, however, only define whether or to what extent defendant was entitled to reimbursement from his wife for his having paid off the mortgage with what he alleges to be premarital assets. These principles do not rationally support the argument that the assigned mortgage continued to burden the property in any other respect, let alone recoil upon Community Bank or its successors.

To be sure, Estate of Colquhoun suggests that a payment of a loan with premarital assets with a concomitant assignment of an underlying mortgage may preserve cotenants' rights and obligations. We need not, and do not, however, opine on whether or to what extent defendant's 2007 payoff of the 1999 mortgage reserved in him the right to seek reimbursement from his wife; assuming that issue has not already been resolved elsewhere,[5] it

---

[5] Recognizing that defendant represented to the trial court that he and his wife were divorced, it is difficult for us to imagine that any claims they may have possessed against each other or
(continued)

is not presented here. Nevertheless, because Estate of Colquhoun constitutes the centerpiece of defendant's argument, we find it necessary to recount its circumstances to illustrate how that case does not govern the disposition of this appeal.

In Estate of Colquhoun, a married couple purchased property in part with funds provided by their son, Robert, who took back a $51,000 mortgage; $35,000 was due by August 31, 1974, which was timely paid, and the $16,000 balance was to be paid to Robert in equal monthly installments over the following twenty-five years. 88 N.J. at 560-61. Four years later, Robert assigned his interest in the mortgage to his father as a gift. Id. at 561. The husband died four months after receiving the assignment; his will disinherited his wife and their two sons, leaving his estate to his brothers and sisters in Scotland. Ibid. The wife died seven months after her husband; she left a will, which directed that neither her husband nor her son, Robert, was to benefit from her estate. Ibid. The wife's estate contracted to sell the property but was stymied by the existing $16,000 mortgage purportedly held by the husband's estate by way of the assignment and that estate's claim for payment, ibid., leading to a suit to determine the liability of

_____

(continued)
their respective interests in the Ventnor property have not already been finally determined.

the wife's estate, if any, on the mortgage, <u>Estate of Colquhoun v. Estate of Colquhoun</u>, 177 <u>N.J. Super.</u> 491, 495 (App. Div. 1981).

The trial judge granted summary judgment, concluding that the wife's estate was liable for the entire $16,000 balance together with interest. <u>Estate of Colquhoun</u>, <u>supra</u>, 88 <u>N.J.</u> at 562. We reversed, finding that "well-settled and long established principles of equity compel the extinguishment of the mortgage in these circumstances." <u>Estate of Colquhoun</u>, <u>supra</u>, 177 <u>N.J. Super.</u> at 496. Specifically, in relying on <u>Grober v. Kohn</u>, 47 <u>N.J.</u> 135, 149 (1966), which held that "[c]o-owners of property, as such, have a 'confidential relation' with respect to certain aspects of their common interests," we held that this duty

> prohibits a cotenant from acquiring an undisclosed adverse interest in the common property for his own benefit, and if he has acquired such an interest, he will be deemed to have done so for the benefit of all cotenants, subject only to their obligation to make a pro rata contribution to the acquisition cost, if any.
>
> [<u>Estate of Colquhoun</u>, <u>supra</u>, 177 <u>N.J. Super.</u> at 497.]

We found this general principle to have antecedents as old as <u>Weller v. Rolason</u>, 17 <u>N.J. Eq.</u> 13, 19 (Ch. 1864) and <u>Rothwell v. Dewees</u>, 67 <u>U.S.</u> 613, 618, 17 <u>L. Ed.</u> 309, 311 (1863), which

relied on the rule as having been "very fully laid down" to the same effect by Chancellor James Kent, who authored the landmark "Commentaries on American Law" in the early nineteenth century. See also Breitman v. Jaehnal, 99 N.J. Eq. 243, 245-46 (Ch. 1926), aff'd o.b., 100 N.J. Eq. 559 (E. & A. 1927). Our Supreme Court reversed our determination in Estate of Colquhoun, not because this ancient rule had lost its vitality, but because the Court found the unique circumstances presented should be controlled by the parties' intentions. 88 N.J. at 565.

In examining vastly different circumstances, we rely upon the well-established principles mentioned above and hold that any interest in the property conveyed to defendant by the assignment related only to defendant's claim, which he was required to assert within a reasonable time, see Estate of Colquhoun, supra, 88 N.J. at 566; Breitman, supra, 99 N.J. Eq. at 245-46, against his wife for reimbursement of her fair share of his payment from allegedly non-marital assets. As to all others, defendant's satisfaction of the debt underlying the 1999 mortgage caused a merger of that mortgage with defendant and his wife's ownership of the fee. Stated another way, absent the assignor and assignee's contrary intention, merger is presumed when the greater and lesser interests in property are joined in the same person or entity. See Anthony L. Petters Diner, Inc.

v. Stellakis, 202 N.J. Super. 11, 18 (App. Div. 1985); Estate of Colquhoun, supra, 177 N.J. Super. at 498; Gimbel v. Venino, 135 N.J. Eq. 574, 576 (Ch. 1944); Thompson on Real Property, supra, § 101.03(e) at 419-20. Here, no contrary intention was expressed or is reasonably inferable from the circumstances; the 1999 mortgage merged in the marital partnership's ownership of the Ventnor property. Estate of Colquhoun hardly suggests a different approach because the Supreme Court in that case merely found the presumption of a merger was overcome by a contrary intention. 88 N.J. at 565.

Here, it is enough to observe that defendant failed to show that Community Bank intended that the mortgage might be used to interfere with its position as the holder of the 2005 home equity mortgage, or otherwise. Indeed, it would be difficult to characterize defendant's alleged intention in obtaining the assignment as anything short of a fraud on Community Bank or its shareholders and successors. We therefore conclude that defendant's payment in full of the remaining debt on the 1999 loan extinguished the mortgage insofar as anyone but his wife was concerned regardless of the mortgage's assignment to him.[6]

_____

[6]The same result is compelled when considering that defendant, as assignee, only obtained such rights and privileges possessed by the assignor. See Gotlib v. Gotlib, 399 N.J. Super. 295, 313 (App. Div. 2008); Gerrold v. Penn Title Ins. Co., 271 N.J.
(continued)

The order under review is affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
Super. 50, 54 (App. Div. 1994).  Once it received payment in full, Community Bank had no further interest in the property; accordingly, it conveyed nothing when it assigned the mortgage to defendant.

A-0305-13T1