**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1459
_____

WILMINGTON SAVINGS FUND SOCIETY FSB

v.

BERYL OTIENO-NGOJE,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2:16-cv-05631)
District Judge:  Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2021

Before:  CHAGARES, PHIPPS and COWEN, Circuit Judges

(Opinion filed: September 27, 2021)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Beryl Otieno-Ngoje appeals pro se from the District Court's grant of summary judgment against her in this civil action brought by Wilmington Savings Fund Society ("WSFS"). For the reasons that follow, we will affirm that judgment.

I.

In 2008, Otieno-Ngoje agreed to purchase, "as is," a residential property located in Orange, New Jersey (hereinafter "the Property"). Her credit apparently was poor, so the mortgagee, GFI Mortgage, Inc. ("GFI"), told her that she needed a co-borrower. Auslene Simon, an acquaintance of Otieno-Ngoje, agreed to co-sign the mortgage. However, at closing, GFI stated that, to secure a good interest rate, the mortgage had to be signed by Simon only. Otieno-Ngoje and Simon assented to this arrangement.

The mortgage, which was for 30 years and $275,400, included a provision stating that, in the event of a loss, "any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened." (WSFS's App. at 171.) This provision further stated that, "[i]f the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." (Id. at 172.) The

2

mortgage made clear that its provisions benefitted not only the lender, but also the lender's "successors and assigns." (Id. at 174.)

From the outset, Simon and Otieno-Ngoje had a verbal understanding that the latter would reside on the Property and make the mortgage payments. But the Property was initially uninhabitable. Nevertheless, for the first year or so, Otieno-Ngoje made the mortgage payments. In 2009, Simon and Otieno-Ngoje executed a quitclaim deed that transferred Simon's interest in the Property to Otieno-Ngoje for $1. That same year, the amount of the monthly mortgage payment increased dramatically, apparently because the homeowner's insurance carrier had withdrawn coverage in view of the fact that the Property was vacant. Otieno-Ngoje attempted to obtain a loan modification, but her efforts were unsuccessful. It appears that, after 2009, she did not make any more mortgage payments.

In 2011, Otieno-Ngoje and her family moved into the Property. That year, she obtained a homeowner's insurance policy from Liberty Mutual (hereinafter "the Policy"). The Policy listed the Property's mortgagee as "Wells Fargo Bank NA . . . ISAOA [(i.e., its successors and/or assigns)]," (WSFS's App. at 198),[1] and the Policy included a mortgage clause. That clause stated, in pertinent part, that "[i]f a mortgagee is named in

_____

[1] By that point, the mortgage had been assigned to Wells Fargo.

3

this policy, any loss payable . . . *will be paid to the mortgagee and you, as interests*

*appear*." (Id. at 210 (emphasis added).)

In late 2015, at which time the Policy was still in effect, the house on the Property

was badly damaged in a fire. At that time, the amount due on the mortgage was well over

$400,000, because the monthly mortgage payments were not being made. Otieno-Ngoje

subsequently submitted a claim under the Policy. Liberty Mutual approved the claim

and, between May and July 2016, issued two checks totaling $340,544.65.[2] Both checks

were made jointly payable to the public adjuster, Otieno-Ngoje, and "Carrington" (which

is short for Carrington Mortgage Services). Carrington was the mortgagee's agent and

the servicer of the mortgage. By that point, the mortgage on the Property had been

assigned multiple times, and the interest was presently owned by WSFS, a Delaware

federal savings bank to whom the mortgage had been assigned a few months earlier.

Liberty Mutual sent the two checks to the public adjuster, who signed them and

gave them to Otieno-Ngoje. When Otieno-Ngoje received the first check, she signed her

name, forged Carrington's signature, and then deposited the check into her bank account.

---

[2] At the time of the fire, there was a second insurance policy on the Property. That policy, which the mortgagee had obtained through a different insurance carrier (Great American Insurance Group ("GAIG")), had coverage totaling about $272,000; however, because Liberty Mutual's $340,544.65 payment exceeded that coverage amount, no disbursement was made under the GAIG policy.

The second check arrived while Otieno-Ngoje was abroad, so she directed her daughter to deposit that check electronically.

Thereafter, WSFS filed a complaint against Otieno-Ngoje in the District Court, invoking that court's diversity jurisdiction under 28 U.S.C. § 1332. WSFS asserted claims for conversion, fraud, and unjust enrichment under New Jersey state law, and it sought to recover all of the insurance proceeds that had been disbursed by Liberty Mutual. The parties eventually filed cross-motions for summary judgment. In February 2020, the District Court granted WSFS's motion, denied Otieno-Ngoje's cross-motion, and entered judgment in favor of WSFS. In doing so, the District Court concluded that each of WSFS's three legal claims had merit, and that WSFS was entitled to all $340,544.65 of the insurance proceeds. This timely appeal followed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and our review over the District Court's summary-judgment decision is plenary, see Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in h[er] favor in determining whether a genuine factual question exists," summary judgment should be granted "unless there is sufficient

5

evidence for a jury to reasonably find for the nonmovant." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (internal quotation marks omitted).

III.

As mentioned above, the Policy stated that any loss payable would be paid to the mortgagee and the policy holder, "as interests appear." (WSFS's App. at 210.) Although WSFS was not assigned the mortgage on the Property until after the fire, WSFS is considered the "mortgagee" for purposes of determining the "interests" under the Policy. This is because the Policy listed the mortgagee as Wells Fargo *and* its successors and/or assigns, and because the "assignee of a mortgage succeeds to the rights and privileges . . . of the assignor." Gerrold v. Penn Title Ins. Co., 637 A.2d 1293, 1295 (N.J. Super. Ct. App. Div. 1994).

To determine the respective interests of WSFS and Otieno-Ngoje, we return to the mortgage's property-insurance provision. Recall that this provision stated that insurance proceeds were to be used to either repair/restore the Property (if economically feasible) or pay down the mortgage balance. There is no indication that using the $340,544.65 in insurance proceeds to repair or restore the Property would have been economically feasible.[3] Furthermore, although the mortgage stated that excess insurance proceeds

---

[3] Otieno-Ngoje testified at her deposition that she obtained estimates from three contractors to repair the Property, and that "[t]hey were all above [$]600,000." (WSFS's App. at 136.)

6

would be distributed to the borrower, that situation did not present itself here because the insurance proceeds were less than the mortgage balance. Accordingly, when Otieno-Ngoje received the two Liberty Mutual checks, she should have just signed them and turned them over to WSFS's agent, Carrington. Instead, she chose to forge Carrington's signature and deposit the checks into her own account. For substantially the reasons provided by the District Court, we agree with the District Court that Otieno-Ngoje is liable to WSFS for committing the tort of conversion. (See Dist. Ct. Op. entered Feb. 14, 2020, at 4-6.)[4]

IV.

We have considered Otieno-Ngoje's various arguments and find none of them persuasive. Accordingly, and in view of the above, we will affirm the District Court's February 26, 2020 judgment entered against her. To the extent that she requests any other relief from this Court, those requests are denied.

---

[4] Although the District Court determined that Otieno-Ngoje was also liable under WSFS's other two causes of action — fraud and unjust enrichment — we need not rule on those to decide this appeal. After all, the District Court did not conclude, and the parties do not argue here, that the amount of damages for one cause of action is different than the amount for the other two.